1818.

White
vs
Wagner

June.

## WHITE vs. WAGNER.

APPEAL from *Baltimore* County Court. This was an action of trespass on the case, in the nature of *waste*, brought by the plaintiff, (now appellant,) for waste and destruction done to her house in the city of *Baltimore*, during the time that the defendant, (the appellee,) was lessee to the plaintiff of the premises. The declaration contained *two* counts. The *first* alleged that the plaintiff was seized in her demesne as of fee, of the premises in question; that the defendant was her lessee from year to year, for the residue of a term commencing on, &c. and that the defendant during his term, &c. contriving, &c. to injure the plaintiff, &c. wrongfully, &c. committed the waste and injury complained of. The *second* count alleged that the plaintiff was possessed of the premises, without stating the quantity of her estate, that for a certain rent she demised them to the defendant for a year, and so from year to year; that the defendant agreed to pay the rent, to use the premises in a husband-like manner, and to deliver them up at the end of his term in as good tenantable repair, as they were when he took possession of them; that he did take possession under the demise, but disregarding his said promises and agreements, he on, &c. collected a large number of persons into the house; and that he, and the persons so collected, committed the waste and destruction complained of. The general issue was pleaded.

A lessee for life or years, without special covenants, is responsible to his lessor for all injuries amounting to waste, done during his term, by whomsoever those injuries may have been done, with the exception of the acts of God, public enemies of the country, and the acts of the lessor himself.

An action on the case in the nature of waste, will lie for waste committed by a tenant for years. And it seems it will lie for permissive waste; and that it is not necessary to declare as for permissive waste.

The distinction taken between voluntary and permissive waste.

1. At the trial it was admitted that the defendant was tenant of the premises in question, as a dwelling-house, under the plaintiff, for a year, at the rent of $350, and that no covenants or agreement were entered into by the parties relative to repairs of the premises, or other matters relating thereto, other than such as are implied by law, except merely the agreement to let the premises by the plaintiff to the defendant for a year, and by the defendant to pay the said rent. That the defendant entered into possession sometime in the month of May 1812, and continued therein until the 27th of June of the same year,

1818.

White
vs
Wagner

when a large armed multitude of unknown persons, being residents of the city of *Baltimore*, or of this state, assembled and combined themselves together in the said city for the purpose of pulling down the said house, and compelling the defendant to desist from the distribution of a newspaper called *The Federal Republican*, and to drive the defendant from the said city. That the mayor of the city, the judges of the court of oyer and terminer and gaol delivery for *Baltimore* county, and other civil officers of the said city and county, being informed of this combination and assemblage of an armed multitude, and the purposes for which they were so assembled, did, by all such ways and means as they deemed best calculated, from the powers they possessed, endeavour to prevent and hinder the said multitude from perpetrating their unlawful and outrageous purposes as aforesaid; but in spite of all the efforts of the said civil officers, and by a power wholly incontrolable and irresistible by the said officers, or by the defendant, the said armed multitude did compel the defendant, and his family, for the safety of their lives, to fly from and abandon said house and premises, and from the said city, and did ruin, spoil, and destroy said house, in the manner as stated in the declaration. The plaintiff then offered evidence to prove, that after the defendant took possession of the said house, he used it for the purpose of receiving therein a news-paper called *The Federal Republican*, which was printed in *George Town*, in the District of *Columbia*, of which the defendant was an editor and proprietor, and from thence to distribute the same to the subscribers to the said paper, who resided in the city of *Baltimore*; and having reason to believe that the said house would be attacked by a lawless armed and unknown multitude, if the said paper was received and distributed therefrom, he collected, in a peaceable and lawful manner, a number of armed men for the purpose of defending the said house against any attack which might be made thereon by the said unknown multitude as aforesaid; and that it was after the introduction of the said armed men to defend the house, and the commencement of the distribution aforesaid therefrom, that the said armed multitude, as herein before stated, attacked, ruined and spoiled the house. To the admission of which said evidence, under the present declaration, the defendant objected. But the Court, [*Bland* and *Hanson*, A. J.] overruled the objection, and permitted the whole of said testimony to be given to the jury. The defendant excepted.

2. The defendant then moved the court to direct the jury, that if they believed the facts so admitted and given in evidence, that then the plaintiff was not entitled to recover. Which opinion and direction the Court, [*Dorsey*, Ch J.] gave to the jury. The plaintiff excepted; and the verdict and judgment being against her, she appealed to this court.

1818.

White
vs
Wagner

The cause was argued on the *second* bill of exceptions before BUCHANAN, EARLE, JOHNSON, and MARTIN, J.

*Raymond*, for the Appellant. This is an action of trespass on the case, in the nature of waste. It is brought to recover damages for the waste and destruction done to the plaintiff's house in *Charles-street*, in the city of *Baltimore*, by a mob in 1812, the defendant being the plaintiff's lessee of the premises at the time. The declaration contains two counts. The *first* merely stating the plaintiff's interest in the premises, the relation between the parties as landlord and tenant, and the injury done to the premises. The *second* count sets out more particularly the implied contracts which the law raises on the part of lessees, and then charges the injury to have been wilfully done by the defendant, in violation of his implied engagements. Both counts are in substance and in law the same; both charge the defendant with voluntary waste—the second setting out the implied contract by way of inducement. Evidence which would support one count, would be equally applicable to the other. Two questions naturally present themselves in the discussion of this case. The *first* question goes to the right of action. The *second* to the form of action.

1. As to the *first* question, it may be laid down as a principle of law, that a lessee for life or years, without special covenants, is responsible to his lessor for all injuries amounting to waste, done to the premises during his term, by whomsoever those injuries may have been done, with the exceptions of the acts of God, public enemies of the country, and the acts of the lessor himself. At common law those tenants only were punishable for waste, who claimed by operation of law, as guardians, tenants by the curtesy, and tenants in dower. A lessor had no remedy against his lessee for waste unless he had bound him by covenant not to do waste; because, as Lord *Coke* says, he that might and would not provide for himself, the common law would not provide for. 2 *Inst.* 145. This, however, was soon found to be a very hard and unreasonable doctrine, and the statute of *Marlbridge* was passed. 52 *Hen.* III, which provided "that farmers should not make waste, unless they had a special license, by writing of covenant, making mention that they may do waste." Lord *Coke*, in his commentary on the words *"non faciant"* in this statute, says "this statute prohibiteth that farmers shall not do waste, and yet if they suffer a stranger to do waste, they shall be charged with it, for it is presumed in law, that the farmer may withstand it, *et qui non obstat quod obstare potest, facere videtur.* The lessor shall have his action of waste against the lessee, and the lessee his action of trespass against him that did the waste; and if the lessor should not have his action of waste, he would be without remedy." This last observation must be confined to the action of waste, and then it is literally true, for waste will only lie against a tenant, although *case* will lie against a stranger

1818.

White
vs
Wagner

who should do waste. 2 *Inst*. 146. *Jefferson vs. Jefferson*, 3 *Lev* 131. *Panton vs. Isham, Ibid* 358. *Biddlesford vs. Onslow, Ibid* 209. The statute of *Gloucester*, 6 *Edw.* I, was subsequently passed on the same subject, which provides that "he which shall be attainted of waste shall lose the thing which he hath wasted, and shall moreover recompense thrice so much as the waste shall be taxed at." Lord *Coke's* commentary on this statute is similar to his commentary on the statute of *Marlbridge*. He says "the tenant shall by construction of law answer for the waste done by any stranger." He says also, that a *feme covert*, and an infant, shall answer for the waste done by a stranger. 2 *Inst*. 303. 1 *Inst*. 53, 54. 7 *Bac. Ab.* tit. *Waste*, (H 1,) 269, 270. An infant and a *feme covert* are destitute both of the moral and physical ability to prevent a stranger from doing waste. It is, therefore, no defence for a tenant to allege his own inability to have prevented the waste from being done. It was as much in the power of the defendant to have prevented the mob from doing the waste in this case, as it could be for an infant a day old to prevent a stranger from doing waste. A guardian is excepted out of the operation of the statute of *Gloucester*, for waste done by a stranger. The reason given by Lord *Coke* for this exception is, "that it is so penal unto him." Like other tenants he was not only to lose the place wasted and treble damages, but if convicted of waste he was, by the common law, to lose his wardship, a thing often of great value in those times. *Co. Litt.* 54. It appears also from a decision in 9 *Edw.* II, that if thieves burn the house of a tenant for life without evil keeping of the fire of lessee for life, the lessee shall not be punished therefor in an action of waste. It is impossible to devise upon what principle this case was decided, as the Year Book in which it is reported cannot be obtained. It is, however, of little consequence, as it is but an exception to the general rule, and does not embrace the case before the court, and *exceptio probat regulam. Brooke* in his *Abridgment*, tit *Waste*, pl. 15, says, that if waste is done by the King's enemies, the tenant is not answerable, but it is otherwise if done by traiterous subjects of the king. *Year Book,* 33 *Hen.* VI. The tenant is excused for the acts of God and public enemies, because he has no remedy over. 2 *Inst.* 145; 303. *Co. Litt.* 54. The tenant must either be liable for the acts of *all strangers*, (with the foregoing exceptions,) or for none. His liability cannot depend on the number of strangers concerned in doing the waste, or upon the degree of force used. If done without the tenant's knowledge or against his will, it can make no difference in principle whether the waste was done by one man or by five hundred. If the defendant is not liable for waste done by a stranger, he can plead it in bar. Will it be pretended that it is a good plea in bar for the defendant to say, the waste was done by a stranger? *Bull. N. P.* 119. *Vin. Ab.* tit. *Waste,* (K.) This law is founded on the soundest reason; for deplorable indeed would be the condition of lessors if such were

1818.

White
vs
Wagner

not the law. This liability of lessees is the only security lessors have against their collusion with strangers to do waste. The lessor. who is usually at a distance from the premises, often would not know who had committed the waste, and often would not even know, until long afterwards, that waste had been committed. If the tenant is not liable for the acts of strangers, he will have small inducement to be vigilant in preserving the premises committed to his charge. He will have still less inducement to incur the trouble and expense of a law suit to recover damages for waste after it has been committed; so that in point of fact the landlord would, in most cases, be remediless, and the wrongdoer go unpunished. So rigidly was the principle of law, upon which the plaintiff founds her claim, enforced under the statutes of *Marlbridge* and *Gloucester,* that tenants were made responsible for destruction done to the premises by fire communicated by accident or mischance: and so the law continued to be until the 6 *Anne, ch.* 31, which exempted tenants from liability for waste, occasioned by fire, without his default. *Pantam vs. Isham,* 1 *Salk.* 19. S. C. *Holt,* 9. *Countess of Salop vs. Crompton, Cro. Eliz* 777. *Countess of Shrewsbury's* Case, 5 *Coke,* 14. *Attersoll vs. Stevens,* 1 *Taunt.* 183.

But were it admitted that a tenant for life or years is not responsible to the lessor for waste done to the premises, during his term, by a stranger, without default of the tenant, still the defendant in this case would be liable for the waste complained of. The defendant has been guilty of such a default—of such a misuser of the premises, as will make him answerable for the injury done to the house by the mob. The defendant rented the house as a dwelling-house for his family. The parties, at the time the contract was made, did not contemplate its being appropriated to any other purpose. The defendant afterwards used the house for the purpose of receiving therein *The Federal Republican* news-paper, and distributing the same to the subscribers. He knew at the time it was a very obnoxious paper, and it is proved that he had reason to believe the house would be attacked by a lawless multitude, if the paper was received and distributed therefrom; and that in consequence of these apprehensions, he collected a number of armed men in the house for the purpose of defending it. This was surely such a misuser of the premises as would make him responsible for all consequences upon the ground of his own default. Had the plaintiff supposed the house was to have been appropriated to that use, she would not have let it to the defendant, or if she had, she would have demanded an increased rent in proportion to the risk. A tenant has surely no right to convert a house, rented as a dwelling, into a garrison, at the risk of his landlord.

Upon either of the foregoing grounds, therefore, the plaintiff has an undoubted right of action against the defendant.

2. As to the form of the action. The action of trespass on the case, in the nature of waste, has almost entirely superseded the old action of waste, which Serjeant *Williams*, in his notes to *Saunders*, says is now very seldom brought. Case is a far more convenient action to the plaintiff than waste. It is also more beneficial to the defendant, as it relieves him from the penal consequences of waste under the statute of *Gloucester*, the plaintiff recovering no more than the actual damage the premises have sustained *Greene vs. Cole*, 3 *Saund*. 252, (note 7.) *Jefferson vs. Jefferson*, 3 *Lev.* 131. *Pantam vs. Isham*, *Ibid* 358. *West vs. Treude*, *Cro. Car.* 187. *Countess of Salop vs. Crompton*, *Cro. Eliz.* 777, 784. *Countess of Shrewsbury's* case, 5 *Coke*, 14. It is decided in *Kinglyside vs. Thornton*, 2 *W. Blk. Rep.* 1111, that case in the nature of waste will lie, although the tenant has specially covenanted not to do waste. But it has been said, and will probably be said again, that this is permissive waste, and that case will not lie for permissive waste, upon the authority of *Gibson vs. Wells*, 4 *Bos. & Pull.* 290, and *Herne vs. Bembow*, 4 *Taunt.* 764. But this is voluntary and not permissive waste. Whether waste be voluntary or permissive, is to be ascertained by reference to the nature of the injury, and not to the intention of the tenant. If waste be produced by human volition, it is surely voluntary waste, whether the will of the tenant concurred in it or not. It will not be pretended that the waste complained of was not caused by human volition. It is then voluntary waste, according to the literal meaning of the words; and by construction of law it is voluntary waste in the defendant, as the law presumes he could have withstood it, *et qui non obstat quod obstare potest, facere videtur*. This is also voluntary waste, according to the definition of the books. 2 *Blk Com.* 281. 3 *Blk. Com.* 223. 7 *Bac. Ab.* tit. *Waste*, 251. But admitting this to be permissive waste, case in the nature of waste is nevertheless the proper action to recover for it. *Williams*, in his notes to *Saunders*, says that case is now the usual action as well for *permissive* as voluntary waste. *Greene vs. Cole*, 3 *Saund.* 252, (note 7.) *Pomfret vs. Ricroft*, 1 *Saund*, 323, (note 7.) There can surely no reason be given why case should not lie as well for permissive as voluntary waste. The dictum of Sir *James Mansfield*, in *Gibson vs. Wells*, (and it is a mere dictum, for the point he assumed to decide was not before the court,) is entitled to very little respect. That was an action of trespass on the case, brought against a tenant at will for permissive waste. It is settled law that *case* will not lie against a tenant at will for any kind of waste. Trespass will lie against a tenant at will for voluntary waste, but *case* will not. *Countess of Shrewsbury's* case, 5 *Coke*, 14. *Countess of Salop vs. Crompton*, *Cro. Eliz.* 777. *Pantam vs. Isham*, 1 *Salk.* 19. Sir *James Mansfield* was not, therefore, called on to decide in that case, whether *case* would lie for permissive waste. His assertion was wholly *obiter*. The

1818.

White
vs
Wagner

reason given for this opinion is not less singular than the opinion itself. He will not maintain the action, because if he did, "such an action might be maintained against a tenant at will, who omitted to repair a broken window." He ought to have known that such an action would not lie against a *tenant at will* for breaking a window, or even pulling down the house. But it seems Sir *James* would not support the action, lest some litigious spirit should avail himself of it to sue for a trifling, contemptible injury; or in other words, he would block up one of the great public highways leading to the temple of justice, lest if kept open, some querulous vagabond might travel on it. A very comprehensive reason this, and might with equal propriety be applied to every other action known to the law. If this action is denied to landlords for permissive waste, they have only to resort to the old action of waste, and recover treble damages, and that too for not repairing a broken window. In the *Countess of Shrewsbury's* case, the action was *case* for *permissive waste,* yet Lord *Coke* makes no objection to the form of action, on the ground of its being permissive waste. So in the case of *Countess of Salop vs. Crompton,* and in *Pantam vs. Isham.* The inference is therefore a strong one, that the judges did not conceive any objections could be made to the actions on that ground. In *Radcliff vs. D'Oyley,* 2 *T. R.* 630, it is expressly decided, that trespass on the case will lie for dilapidations suffered in a prebendal house by a prior incumbent. Dilapidations is permissive waste. The case of *Herne vs. Bembow* professes to adopt the principle decided in the *Countess of Shrewsbury's* case, but that case merely decides, that *case* will not lie against tenant at will for permissive waste. The case turns upon the character of the tenant, and not on the nature of the waste. It is, therefore, no authority, inasmuch as the court mistook the case they professed to be governed by. This is another of Sir *James Mansfield's* decisions. A declaration on a voluntary escape may be supported by proving a negligent escape. *Jones vs. Pope,* 1 *Saund.* 35, *(note 1.)*

*Winder,* for the Appellee. Much doubt exists as to the law upon the subject under discussion, if there is any force in the argument of the counsel for the appellant. What was the remedy which the landlord had against his tenant? If waste would not lie, then it must be admitted that this action cannot be sustained. There is no decided case where an action has been maintained against a tenant, where the damage, no matter in what manner, was occasioned by a force against his will. Lord *Coke* fell into a great mistake, and that he did fall into mistakes subsequent decisions show. He refers to *Brooke's Abridgment,* and the *Year Books;* and it can be shown that the earliest decisions are against him. In his 2 *Inst.* 145, 146, he says, that the statute of *Marlbridge* "prohibiteth that farmers shall not do waste, and yet if they suffer a stranger to do

1818.

White
vs
Wagner

waste, they shall be charged with it," &c. "and that the lessor shall have his action of waste against the lessee, and the lessee his action of trespass against him that did the waste; and that if the lessor should not have his action of waste, he should be without remedy." The same idea is repeated in several passages in *Co. Litt.* 53, b; 255, a. He lays it down, that whoever does the injury, the landlord has remedy for it against the tenant. It is not true that the landlord has no remedy against the person who committed the injury. If it can be shown that there is no adjudication upon which Lord *Coke* founds the dictum, then must the dictum be disregarded. It is shown both in *Jefferson vs. Jefferson*, and *Gibson vs. Wells*, that Lord *Coke* was mistaken, and that he meant that the lessor had no remedy by an action of waste; and in *Attersoll vs. Stevens* it is said, that all practice is against the dictum of Lord *Coke*. The reason of the law given by Lord *Coke* has failed. What is the remedy by a tenant against a wrongdoer? It is trespass; but he cannot recover for an injury done to the inheritance; he can only recover for the injury done to himself. If trees are cut down, he can only recover for the damages occasioned by depriving him of their shade, but not for the value of the trees. If the tenant is liable for waste committed by a stranger, he is liable for all the injury done to the freehold. Can it be said that a tenant, who has been obliged to abandon the premises by an overwhelming force, should be compelled to pay for the damages sustained? Is it reasonable that the landlord should recover of the tenant? Why should the tenant be answerable to the landlord more than any body else? He has nothing to do with the inheritance. He only acquires the rights of a tenant; all other rights remain in the landlord. No injury can be done to the one, without being done to the other. Is there then any reason that the tenant should be answerable, where he is injured, as well as the landlord? To give the remedy solely against the tenant, is to say that no one but the tenant can do an injury to the landlord. Suppose there are two persons, one holding in reversion, and the other in possession. is the tenant answerable to both for waste? In 22 *Vin Ab. tit. Waste*, the alteration made by the statute from what waste was at common law, is stated, and what was the remedy at common law, and how altered by the statute. At common law the tenant was not liable for waste committed by a stranger, but was made liable under the statutes; and that prohibition could only go to the tenant to prevent his doing waste—not that he should prevent others. The action of waste against a tenant was given by statute. Lord *Coke* seems to have derived his information from the Year Book, 33 *Hen.* VI, p. 1. where no decision appears to have been made. The only part that looks like a decision is, that if the marshall was negligent and did not keep a guard, then he shall be answerable for an escape; but if the escape was occasioned by fire, then he is not answerable. In *Bro.*

*Ab. tit. Waste*, pl. 15, the case in 33 *Hen.* VI is cited, and the *dictum* is relied on, that if strange enemies destroy the house, waste does not lie, but it is otherwise by enemies, traiterous subjects of the King. This is the only authority upon which Lord *Coke* has founded his dictum, and this is no authority. In 1 *Co. Litt.* 53, b, § 57, *Fleta* is cited, and it is said that waste and destruction are convertible terms; that for all accidents over which the tenant had no control he was not liable; and he is not liable for losses occasioned by accidental fires. If thieves burn the house, the tenant is not liable. 2 *Inst.* 303. At common law a tenant was not liable for the acts of a stranger, and until the statute no recovery could be had against him for waste of any kind. Lord *Coke* did not even except the acts of the lessor himself; but said the tenant was liable in all cases, except in cases of injury by the act of God or the King's enemies. The true distinction is, that a tenant is only liable where he permits the waste, or might have prevented it, but did not do it, as it may be considered that he who gives permission to another to do an act, or may have prevented it, and would not, in fiction of law is supposed to have done the act. But for all accidents by fire, &c. the tenant is clearly excusable. If the tenant is not liable to the action of waste, then certainly he is not to the action on the case in the nature of waste. This action does not come in aid of the action of waste in all cases. That action is founded in technical fiction under the statute. The action on the case gives a remedy against the party who committed the injury, and to the extent of the injury, and may be brought by every person affected by the waste, against the tenant in possession or a stranger; but waste can only be brought by him that hath the immediate estate and inheritance in fee simple, or fee tail. 7 *Bac. Ab.* tit. *Waste*, (G) 263. 1 *Inst.* 53, b. 285, a. 3 *Saund* 252, b *(note 7)*. 2 *Chitty's Plead.* 344, *(note q.) Ibid* 336. If the landlord and tenant can both bring their action against the wrongdoer for the same injury, where is the boasted rights spoken of by Lord *Coke?* On this principle the landlord could recover against a stranger, and so could the tenant—the landlord could recover against both tenant and wrongdoer, and the tenant recover also against the wrongdoer, who could not plead in bar any recovery against him by the landlord. There would then be a double recovery against him, and a double satisfaction for the same injury. Suppose the tenant commences his suit against a stranger immediately after the injury is sustained, and the landlord lies back—The tenant could only recover for the injury done his possession. He could not recover for any other injury until the landlord had recovered against him. Could the tenant bring a new action against the wrongdoer, and recover the amount which the landlord had recovered against him? Besides, limitations might bar the tenant's second action against the wrongdoer. All this shows how irrational the

doctrine is which is contended for on the other side.   But the hardships attending landlords, if they are compelled to resort to wrongdoers, has been urged.   The hard-ships are as equally great on the part of tenants, and if either is to suffer, it ought to be the former.   It is more reasonable that it should be the landlord, and not the tenant, who is to suffer.   This action is not on the same grounds as the action of waste.   It is founded on the real facts in the case, and gives a remedy against the wrong-doer.   The court will probably be referred to the case of common carriers.   With respect to them, and their liabili-ty, so is the law written, but with respect to tenants it is not so written.   The liability of common carriers has been decided in numberless instances, and is well settled in the law.   It is conceded that a tenant is answerable where he permits the waste; but it is denied that he is liable for that over which he had no control.   There is no case in the books of an action on the case, in the nature of waste, against a tenant for injuries done by a stranger, over which the tenant had no control, and could not prevent, and did not permit.   There is no case of such an action where the injury was by a third person, no matter how done.   If in the lapse of 600 years there is no such case to be found, the inference is irresistable, that none such can be supported. This is a sufficient answer to every thing which has been or can be adduced upon the subject.   In *Jefferson vs. Jeffer-son*, the action was against the tenant who did the injury. In *Biddlesford vs. Onslow*, the landlord sued the wrong-doing stranger.   The defence set up there was, that the tenant should have brought the action, and not the land-lord, for the overflowing and drowning wood, &c.   But it was held that the landlord might recover for the injury done to the inheritance, and the tenant might sue for the damage done to his possession; that the tenant could not give a discharge against the damage done to the landlord. In *Pantam vs. Isham*, the landlord being seized of six sta-bles, let one to the defendant, a tenant at will, and the rest to other persons for a term of years; by the negligence of the defendant in keeping his fire, it burned the plaintiff's stable, and also the defendant's, and the other five stables. It was held that no action lay against the defendant for the stable he took, but for the other stables an action would lie against him.   This does not sanction the principle that the landlord can sue his tenant for an injury done by a stranger.   *The Countess of Salop's* case was for negligence by the tenant, and it is not denied that the action was not well brought.   But it does not affect the case before the court.

At all events, the tenant is not liable for *permissive waste*, and this is proved by the authorities before referred to.   The consent of the tenant makes it *voluntary* waste, without such consent it is *permissive* waste.   *Attersoll vs. Stevens*, 1 *Taunt*, 189, per *Chambre*, J.   The facts show in this case that it was permissive waste; and as being

established, the action cannot be sustained. The prece-
dents in *Chitty's Pleadings* are all for *voluntary* waste,
and there are none against a tenant for *permissive* waste,
because no such action will lie. *The Countess of Salop's*
case, 5 *Coke,* 13. *Gibson vs. Wells,* 4 *Bos. & Pull.* 290.
*Herne vs. Bembow,* 4 *Taunt.* 764. Tenants at will do
not at this time exist in *England. Rob. on Frauds,* 244.
*Clayton vs Blakely,* 8 *T. R.* 3. The declaration in this
case is for commissive or voluntary waste, and the proof
is that it was permissive waste. The action is founded on
a *tort* on the part of the *tenant,* for which he is liable in
this form of action for voluntary waste; but for permissive
waste, it is no tort committed by the tenant, and the only
remedy of the landlord is an action on the contract against
the tenant for a violation of his engagement, for which an
action of *assumpsit* would lie. *Herne vs. Bembow,* 4
*Taunt.* 764. But for a positive wrong against the land-
lord, then the tenant is a tort feasor, and may be sued in
this form of action; but he cannot be called a tort feasor
for acts done which he could not prevent and did not con-
sent to.

But if all the points urged are not sustainable, still the
declaration does not set forth a case which is supported by
the evidence, and therefore, the plaintiff cannot recover.
It is said in 3 *Saund.* 252, b, *(note 7,)* that "it seems ne-
cessary in an action on the case, as well as in an action of
waste, to state in the declaration the nature and kind of
waste which is the subject of the action; and the plaintiff
will not be permitted to give evidence of a different sort
of waste from that which is laid in the declaration."
Here the declaration charges commissive waste, and the
proof is of permissive waste. There was no express
agreement between the plaintiff and defendant, and the
plaintiff cannot rely on the *implied assumpsit* and prove a
tort. *Herne vs. Bembow.*

*Pinkney,* in reply. The general doctrine is established,
that a tenant is liable to his landlord for waste committed
on the premises in his possession by a stranger. This has
been handed down to us by all the elementary writers, and
the great sages of the law. But it has been said that the
doctrine originated in the blunders of Lord *Coke,* in lay-
ing down the general doctrine of waste. He has not been
accused of such blunder by any one but by the learned
counsel of the appellee. It is not the doctrine of Lord
*Coke* alone; it is to be found so stated by *Fitzherbert,*
*Brooke* and *Moor,* and by all the abridgers of the law be-
fore Lord *Coke;* and it has been assumed as a principle
which nobody denied, either before or since Lord *Coke.*
He did not invent the doctrine, and would not speak of
*femes covert,* and infants, as being answerable for waste
committed by strangers, unless it was well settled. Mr.
Justice *Heath,* in *Attersoll vs. Stevens,* recognizes the whole
doctrine for which we contend. He lays it down as "com-

mon learning, that every lessee of land, whether for life or years, is liable in an action of waste to his lessor for all waste done on the land in lease, by whomsoever it may be committed." We cannot go amiss for the doctrine. *Brooke* and Lord *Coke* are sufficient authority for it. Without this right of the landlord to resort to his tenant, the law would be defective. It is like the case of a common carrier, founded upon great principles of public policy. If he is robbed upon the highway of money placed in his hands, he is answerable to the owner, because he had parted with his property. The reason of the law is equally applicable to a tenant He is the bailee for the benefit of his landlord, who cannot protect himself against strangers, and the tenant is there to protect him. This case cannot be distinguished in principle from that of a common carrier, and the law is as well settled with respect to the former as it is to the latter. The tenant being in possession is presumed in the law to be able to prevent destruction to the premises. What is the presumption as to a common carrier? That he is able to protect the property in his possession. The presumption of law may be false, as it often is; and although the carrier may be obliged to submit to the force used, yet the law completes his liability. It is so as to a tenant; and it is as reasonable in the one case as it is in the other. It is for the great benefit of public justice; and although the rule may militate against moral justice, and it often does, yet a court of equity can give no relief. The liability of a tenant for the acts of strangers, is upon the ground that he has power to prevent them; and he who has power, though constructive, and does not exercise it, is considered as doing that which is done. So is a tenant in dower and by the curtesy liable for the acts of strangers, upon the ground that they had the power to prevent them, and not preventing them are considered as doing them themselves. If a common carrier is robbed, he is considered in the law as if robbed by himself. This is the same kind of action as that against a common carrier, who is considered, by construction of law, of being guilty of robbing himself, even where the robbery is committed by a force which he cannot resist. If a mob assails a gaol, breaks it open, and lets out the prisoners and debtors, still the gaoler is liable. Has the gaoler such an armed force as would prevent it? He is found in an unarmed state, and cannot resist the force. Is the sheriff answerable? Whoever doubted it? The responsibility stands upon the same principles which govern as to tenants and common carriers. The new fangled notions of justice are, that he did every thing in his power to prevent the act, and therefore must be excused. But the law presumes he had the power to prevent the act, and although in fact he had it not, yet he is liable for the consequences. There are several modern decisions, which go to fortify the doctrine we contend for, and the right of the tenant to recover over against the wrong doer. 7 *Bac. Ab.* tit. *Waste.* The te-

1818.

White
vs
Wagner

nant has complete remedy with reference to his own and his landlord's injuries; as in the case of a common carrier, where the owner may pass by the carrier and sue the hundred, and recover the value of the goods of which the carrier is robbed, or the carrier may sue the hundred. The two cases are precisely analogous, and the tenant, or common carrier, may sue the wrongdoer without waiting to see whether the landlord or owner of the goods will sue. The remedy for waste was not merely preventive by a writ of *Estrepement*, or prohibition *pendente placito*, but it was also corrective by a writ of waste against the tenant, founded partly upon the common law, and partly upon the statute of *Gloucester. Blk. Com.* 225. But it has been urged that accidental destruction of the premises by fire excused the tenant, and *Fleta*, liber 1, *ch.* 11, has been referred to. But *Fleta* means fire by lightning from Heaven—the act of God. It has never been decided that the tenant was not liable in the case of the destruction of the premises by fire, unless it was fire occasioned by lightning. If fire in every case was an excuse to the tenant, why was the statute of *Anne* passed? Why were strangers made liable in the case of fire, and the tenant not? There are only two exceptions—where the injury is done by the king's enemies and by the act of God. Waste is not an action which the law discountenances. It was interpreted an equitable action. Under the statute which enabled tenants in common to bring actions of waste, joint tenants were considered as included. The statutes of waste were favourites of courts of judicature. But where the house of the tenant is burnt by thieves in the night, the tenant, it is said, was not responsible. That, however, is not similar to the present case. Admit that where there was no negligence on the part of the tenant, he is not liable. The defendant here is not in that situation. Was he free from negligence? He was aware of the mob, and introduced armed men into the house. What was the legal effect of this act of his? He rented a house as a dwelling, and appropriates it to another purpose. He is aware of the consequences, and converts the house into a fortress. He provides means of defence, and it is he who provokes the attack. He, therefore, is answerable for the consequences. He is *in delicto*. If the cases then turned upon the fact of negligence or not, as contended by the defendant's counsel, the defendant is certainly answerable. Go to the case of a common carrier—He is exempted by the act of God—If his bark is overset, he is excused; but suppose in a violent tempest he puts to sea, and is upset, is he not answerable? Surely he is, and it is in vain for him to rely upon the act of God as an excuse. *Forward vs. Pittard*, 1 *T. R.* 27. *Colt vs. M'Mechen*, 6 *Johns. Rep.* 160. Here the tenant, instead of retreating, provides the means of resistance. This is such conduct as would make him answerable, and is strictly within the case cited from *Co. Litt.* and that of a common-carrier. The only exception which has been

relied on, is one which, under its qualification, goes to defeat the defence set up by the defendant. In all cases where there is no fault, then the tenant is not liable, is what the counsel for the appellee contends for; but he did not show that the defendant did no act to occasion the destruction of the house. The true rule, the counsel says, is that where the tenant connives at the injury, he shall be made to answer for the damage. And yet that would be a case where he could not sue the wrongdoer, because that would be to sue himself. He is a constructive participator in the waste. If he stands by and permits the injury, it is his own act; there is no occasion for authorities to prove this. The cases where there is a constructive power to repel the force, is that to which the law refers. It must be that the tenant is liable in every case, except as to the King's enemies, or that he is not answerable at all. Were it so that tenants were not liable, what innumerable frauds would be practised. Tenants would commit injuries, and charge them upon strangers. Permissive or negligent waste is just as much within the statute as any other waste. If permissive waste is excluded from the statute, then there is hardly any waste upon which the statute can operate. The form of the writ of waste shows conclusively, that all sorts of permissive waste was covered by the statute. If the case of fire ever did form an exception out of the law, it was for a reason which has no sort of application to the present case, except as it applies to negligence. But it is said, that the action on the case can only lie against the actual doer of the wrong. There has been no authority cited to prove this position. But the case of a common-carrier shows that this action lies against the common-carrier for an act done by a stranger—a robber. How can it be said then that no such action can be sustained against a tenant for injuries done to the premises by a stranger? The common-carrier is sued upon the ground of contract. So when a tenant enters into possession, he is bound to protect the premises, and the law constructively makes him adequate to protect them. The action against the common-carrier, and the action against the tenant, both charge constructive negligence. They are both *assumpsit*—both originating in contract. The action on the case is to be suited to the case as the action imports. How can it be said that it cannot be maintained when it is suited to the case? It was invented for the purpose of being suited to every man's case. It is a substitute for the old common law remedies, and has been applied to cases where waste would not apply. All the common law remedies were shackled, and this action was introduced to unshackle those remedies. This action lies for a *nuisance*, and a remedy is given to a tenant for years with respect to a right of common. He might elect certain specific remedies, and be restored if he succeeded. This action is substituted in the place of *Novel Disseisin*, and is given where before it could not be brought. The legal rights of the parties are inquired into,

and if he had a right under the common law, then he may maintain this action. The court first decides what is lawful before they inquire whether it is equitable or not. Here they must take it as it stands, and are not to inquire whether it is equitable or not that the defendant should be made liable. But the justice of the case is with the plaintiff, and the record need only to be looked at to be so considered. It was a wrong committed against the plaintiff, to which she was no party, and in a legal point of view the injury originated by the misconduct of the defendant. There is no equitable principle which would not fix the defendant, and make him liable. It has been asked how the tenant was to recover against the wrongdoer? The answer to this is given in *Co. Litt.* 57, a, *(note 2,)* where it is said that both the landlord and tenant can bring an action against the stranger to recover their particular interest; and so may the tenant bring the action to recover for himself and the landlord. *Ibid (note 4.)* The tenant may have either trespass or an action on the case, because he is answerable over in waste. He may sustain an action because he is liable to his landlord. At any rate it cannot be that if the landlord recovers of the wrongdoer, that the tenant can also recover of him for the same injury. There ca[...] such absurdity as a double recovery. But if t[...] recovers only to the extent of his right, there is nothing to prevent the landlord from recovering to the [...] of his interest; and if the tenant recovered to the [...] his own and the landlord's interest, then the landlord must resort to the tenant alone. The tenant is liable to the landlord in the first instance, and the landlord may resort to either the tenant or the stranger, but he cannot recover against both. But it has been urged, that the waste charged in the declaration is not voluntary, but permissive waste, and that the action does not lie for a permissive waste, if it does for a voluntary waste. We deny that this is permissive waste, but if it is, the action lies for it. There are two kinds of waste—1st. *Voluntary* or *actual.* 2d. *Permissive* or *negligent.* Voluntary waste is by the tenant himself, or by his servants, or by strangers, for which, in construction of law, he is liable  Permissive waste is suffering the thing to go to destruction by the ordinary operations of time, and not by the act of man. Voluntary waste is attributable to man, and is the result of volition. The whole affair is a mere construction of law, and has nothing to do with the fact. It is admitted that a tenant is answerable for voluntary waste. It must be voluntary or actual, instead of permissive, having reference to human action. The court here are not driven to the conclusion of construing this to be permissive waste. Where the law by construction connects the man with the act, he is compelled to adopt it as his own act. The books have defined permissive waste more particularly than other kind of waste. It is for the consideration of the court upon principle looking to the reason of the thing. We con-

sider it to be voluntary waste, but there is no direct au-
thority upon the subject. If it is voluntary waste, and
there is nothing to prevent this court from so considering
it, then the defendant is concluded. But an action on the
case may be brought for permissive as well as voluntary
waste, and the plaintiff is not bound to count upon it as
permissive waste. It is not said that this action does not
lie for the waste complained of, as permissive waste, but
it is contended that it will not lie for permissive waste at
all. There is no reason why it should not. At common
law the door was opened to all kinds of waste, whether vo-
luntary or permissive; and with respect to tenants for life or
years there was no distinction as to the nature of the waste.
By permitting a remedy for voluntary waste, it was per-
mitted for permissive waste; and in the opinion of the an-
cient law writers there was no distinction; nor was there
any distinction taken by the makers of the statute of *Glou-
cester.* If it is not in the common law, before the statute,
where are we to search for it? If this is a proper action
for voluntary waste, why is it not for permissive waste? Is
the tenant's permitting the premises to go to ruin, to ex-
empt him from liability for the injury? It is more natural
that this action should lie for permissive than for voluntary
waste; because for a voluntary waste, by strangers out of
possession, an action of trespass *vi et armis* would lie. Is
there any reason for excluding permissive waste with re-
gard to the landlord or tenant? In the action of waste the
tenant is liable for both kinds of waste. He was liable to
treble damages, and the loss of the place on which the
waste was committed. The change of action was to ad-
minister actual justice between the parties; and this action
was received with open arms in the place of the action of
waste. Why reject it then as applicable to permissive
waste? If it is applicable to voluntary waste, it is more
so to permissive waste. Is it not for the benefit of the te-
nant to substitute this for the action of waste? It surely
must be; and it is for the benefit of both landlord and te-
nant. Why drive the plaintiff to an antiquated action when
more justice may be done in the present action? To prove
that this action may be sustained, nothing more is necessa-
ry than to prove it will lie for voluntary waste. It may be
shown that it has been the usage to recover for permissive
waste. In *Gibson vs. Wells*, the reasons assigned by the
chief justice stopped the further progress of the cause—
that if the action was maintainable it might be brought a-
gainst a tenant at will who omitted to repair a broken win-
dow. No action would lie either for waste, or on the case
in the nature of waste, against a *tenant at will.* The opini-
on of the chief justice is that he might be answerable in an
action of waste, but not in action on the case. This opini-
on is founded upon two reasons not only ridiculous, but
false. Was it not better to bring this action for the small
waste spoken of by the judge, than to bring the action of
waste? What sort of reasoning then is that of the judge to

1818.
White
vs
Wagner

establish a distinction calculated to compel landlords to do that which was inconsistent with mercy? And although on the trial of the above cause, several precedents were referred to showing declarations for permissive waste, similar to that before the court, but as counts for waste wilfully committed had been joined, and that no express decision had been given on the point in question, the court adhered to their opinion. If there had been no express decision, there was practice, and that was sufficient. There was a time when practice was the first introduction of the law. Look at the opinions of the Serjeants of the Law—they are entitled to the highest respect, and adopted as the law. Precedents settled by counsel are admitted as evidence of the law, although formed without authority. In the precedents referred to, it is said that counts for permissive waste were joined with counts for waste wilfully committed; if the count for permissive waste was a bad one, it corrupted the good counts, and would have been reversed if a judgment had been rendered thereon; and never having been reversed, and although passed *sub silentio*, it is strong evidence of what the law is. It showed the opinion not only of the counsel who brought the actions, but of the counsel who defended the cases. The case of *Gibson vs. Wells* has been principally relied on by the counsel on the other side. He also relies on *Herne vs. Bembow*, where the same tribunal reiterated the same principle, that an action on the case would not lie against a tenant for permissive waste, but that *assumpsit* should have been brought—which was inventing a new form of action on an implied *assumpsit*. And the court said that this form of action could not be brought, because it sounded in tort. There are many cases of *assumpsit* founded on tort. The court cited the *Countess of Shrewsbury's* case, 5 *Coke*, 14, and the reasons given in that case do not justify the decision in *Herne vs. Bembow*. We wish no better authority than Lord *Coke*. We have the opinion also of Sergeant *Williams*, and every writer upon special pleading, that this action may be maintained against a tenant for permissive waste, and there was no suggestion to the contrary until that made by Sir *James Mansfield*. It is said so in *Pantam vs. Isham*, where it was shown to be the settled law, that permissive waste would lie against a tenant for life, or for years. But it is said, that if the waste complained of is permissive waste, it must be counted upon as such—and that here the *allegata* and *probata* do not agree. There is no authority to show that if you go for permissive waste, you must lay it as permissive waste. There is no doubt but you may go for permissive waste, and lay it for voluntary waste. What was the plea at common law? *There was no waste. Non fecit vastum;* and this for permissive as well as for voluntary waste. There was but one form of a declaration in waste. The count followed the writ, and the plea followed the count. If it was so at common law, and this action is substituted for the action of waste, nothing more need

be alleged in the one than in the other; and no reason can be given why it should.   There was as much necessity that it should be stated in the declaration  in an action of waste, that it was for permissive waste, as it is that it should be so stated in this action.   *Precedents* showing a count for permissive waste, are not conclusive that it was absolutely necessary.   In 3 *Saund.* 252, d, *(note,)* it is not said that if you go for voluntary waste you cannot give in evidence permissive waste, the latter being included in  the former, whereas the former may not be included in the latter.   The statute of *Gloucester* embraced permissive within the description of voluntary waste.   If the common law made a person who committed permissive waste, as included within that of commissive waste, then the admission of this action,  as a substitute for  the old action of waste, has the same effect.   If it was included in the one,  it is included in the other.   But here the *first* count is sufficient without the aid of the second.   In *Govett vs. Badnidge*, 3 *East,* 62, which was an action partly on contract, and partly on tort, and it  was held that the gist of the action  was *tort,* and not the *contract* out of which it arose.

BUCHANAN, J. delivered the opinion of the Court, dissenting from the opinion of the court below in the *second* bill of exceptions.

JOHNSON, J. The action in this case was brought in *Baltimore* county court, to recover damages for *a dwelling-house* on *Charles* street, in the city of *Baltimore,* which was materially injured during the time it was let by the plaintiff to the defendant.

The facts as they  present themselves on the bill of exceptions are: (He here stated the case.)

The declaration contains two counts, the one an action on the case in the nature of waste, the other on an implied undertaking to restore the property in good tenantable repair, alleging as the breach the destruction of the property by the defendant.

Actions of the present nature have been seldom if ever brought in this state; indeed a transaction similar to the present never before, and it is greatly to be deplored ever did, and it is hoped never will arise again, in which *private property* has been by force destroyed against the exertions of the civil authority, collected on the spur of the occasion for its preservation.   But as the property has been destroyed, as between the landlord and tenant, the question is who must bear the burden of the loss?

In forming an opinion on the present subject it is not necessary to trace the law of waste, as it existed at common law, or as  changed  by the statutes of *Marlbridge* and of *Gloucester;* it is sufficient  to observe, that those statutes make a *lessee for years* liable to the action of waste, in which when determined against the tenant, he forfeited the place wasted, and was compelled to pay treble damages.

1818.

White
vs
Wagner

Waste, *vastum*, is a spoil or destruction in houses, &c. to the disherison of him that hath the remainder or reversion in fee simple or fee tail. The removing wainscot floors, or other things once fixed to the freehold, is waste. *Co. Litt.* 53. 4 *Rep.* 64. 2 *Blk.* 281.

Waste is *voluntary*, a crime of commission, as *pulling* down a house; or *permissive*, which is matter of *omission* only, as by suffering it to fall for necessary repairs.

If the property in question had been destroyed, as set forth in the plaintiff's claim, by the *defendant himself*, or by others at *his instance*, it is clear he made himself liable to an action of waste; wherein not only would have been recovered the house let, (supposing the lease not expired,) but treble damages. The injury done to the property would have assumed the denomination of *wilful waste*. But as the destruction was not, in the common acceptation of the term, made by himself, or by others at his instance, is he liable?

It is not novel in the law to make persons, morally innocent, responsible for the acts of those over whom they had no control. In various instances, where the property of the owner is placed in the care of another, such person is liable to the owner for its loss, or for injuries done to it, which the possessor could not restrain.

The common carrier, the inn-keeper, the sheriff, and others not thought material to enumerate, are responsible for losses which they could not prevent. They stand liable to the owner for all losses, whether sustained by highway robbers, or others, no matter how *incontrollable* and *irresistible* may be the force with which they are assailed. The act of God, and of the public enemies, will only free them from the demand, when the loss proceeded from such act or such enemies, and then only when they are free from every exception.

If the law was otherwise, by conniving with the robbers and thieves, no property could be safe in their custody; it would scarcely ever be in the owner's power to ascertain whether the loss was the result of concert, or of force—whether the alleged attack might or might not have been resisted. To free them from all temptation to swerve from their duty, and to secure an effectual remedy to those who intrust them with their property, all excuses of the kind spoken of are precluded; for it is better that, occasionally, the loss should fall on an innocent person, *than* to relax, and in effect, to defeat all liability.

At the common law all such as were liable to the action of waste, no matter what might be their situation, no matter what might be the power to repel the waste from being done, if it was committed, they were bound to respond. The infant age of the tenant would not free him from the responsibility. Under the statutes of *Marlbridge* and *Gloucester*, the same liabilities are cast on the tenant for years.

The defendant, in the case before the court, comes with-in the purview of those statutes, and must therefore be responsible, unless the overwhelming force, by which the injury was done, exonerates him.

As the property of the landlord is placed in the tenant's possession, who has the legal power to prevent all waste from being done to it, and to recover for it, when committed, as in most instances it would be impossible for the landlord to ascertain in time, or come at the wrongdoer, it appears to have been the policy of the law, to cast the liability on the part of the tenant for all waste committed on the property, except when caused by the act of God, or of the King's enemies. But let it, for argument's sake, be conceded, that if the defendant had continued to use the house for the purpose it was let to him, and that whilst so used, the lawless multitude attacked and destroyed it, that he would not have been liable, *a point not necessary to be determined in this case*; yet as *he* did of his *own authority, without the consent of the plaintiff*, divert the house to a totally different and much more dangerous purpose, well aware of the risk which the property would thereby have to encounter, on principles of law and justice, as between him and the plaintiff, he becomes responsible for the consequences.

If the common carrier, who puts to sea during a storm, or on its approaching, cannot exonerate himself from the loss the storm may produce, which he attempted to buffet, so it appears equally just that a *tenant*, who applies the property to a different purpose than it was let to him, aware of the great increase of risk, in consequence of such diversion, *must bear*, and not *cast* the responsibility on the landlord. My opinion, therefore, is, that on principles of law and justice, the merits of the case are with the plaintiff.

The action of waste appears to have given way to, or been superseded by, the action on the case in *nature of waste*, which is the first count in the present declaration. Two grounds have been relied on against the first count:

1st. That the evidence does not support the count; and

2d. That if the defendant was liable, yet as the *waste was permissive*, and not *voluntary*, an action on the case, in the nature of waste, will not lie.

The declaration, it is true, states the destruction of the property to have been made by the defendant, and by those taken into the house by him.

In common parlance a person cannot be said to have done an act which was done by another; nor can he be charged with causing a destruction to take place when every exertion in his power was used to prevent it. But in the legal acceptation of the charge, he who does certain acts, by others, is said to have done them himself. *Qui facit per alium facit per se.* If the tenant is *generally* responsible for *all* waste committed by strangers, no matter how overwhelming the power, how much more strong is the case

before the court, when the property in question was applied to a different object than that for which it was let; the defendant having reason to believe that in consequence of such application "the house would be attacked by a lawless armed and unknown multitude"—As, between the plaintiff and defendant, the acts of the multitude produced by the acts of the defendant, and those in concert with him, must be imputable to the defendant himself, and of course the charge, as contained in the count, is correct.

The second objection to the count by the preceding reasoning is also removed; for, if the defendant is to be liable as of himself, for the waste committed by the lawless multitude, then it follows that the destruction to the property in question, comes strictly under the denomination of *voluntary* waste, for which, no doubt is entertained but that the present action is applicable It would then appear that there is no need to form an opinion, whether the action on the case, in the nature of waste, will, or will not lie for permissive waste; but the inclination of my mind is, that that action will be sustained as well for the one as for the other description of waste. It is a form of action, long since introduced, to recover for such injuries; it is an equitable action, and ought not to be discountenanced; it confines the recovery to the real loss sustained; and I see no reason to say that it will not lie in *all cases*, and against *all* persons, who are at common law, or under the statutes of *Marlbridge* and *Gloucester*, made *liable to the action of waste*.

As the case is covered by the first count in the declaration, I deem it totally unnecessary to add whether the evidence sustains the second.

The opinion of the court below, as pronounced on the second bill of exceptions is erroneous, and the judgment obtained in consequence thereof is reversed.

MARTIN, J. dissented.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.